No. 23-3606

---

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

ANN JONES and JANE TENZER, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

v.

PAPA JOHN'S INTERNATIONAL, INC.,

*Defendant-Appellee.*

---

On Appeal From the United States District Court
for the Eastern District of Missouri, Case No. 4:22-cv-00023-SRC
The Honorable Stephen R. Clark

---

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

---

Karen Hanson Riebel
Kate M. Baxter-Kauf
Maureen Kane Berg
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue S., Ste 2200
Minneapolis, MN 55401
(612) 596-4097

Tiffany Marko Yiatras
**CONSUMER PROTECTION LEGAL, LLC**
308 Hutchinson Road
Ellisville, Missouri 63011-2029
(314) 541-0317

Bryan L. Bleichner
Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue S., Ste 1700
Minneapolis, MN 55401
(612) 339-7300
***Attorneys for Plaintiffs-Appellants***

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................2

  I.   Missouri Has Specific Jurisdiction over Papa John's Because Defendant Extracted Data from Missouri Citizens to Market to Missouri Citizens—in Connection with its Missouri Stores. ...........................................................3

  II.  Jurisdictional Discovery is Appropriate Given the Jurisdictional Facts in Dispute About Defendant's Missouri Footprint. ...........................................11

  III.  Plaintiffs Have Standing Because They Suffered A Privacy Injury Closely Related to Traditional Privacy Harms. .........................................................13

      a.   Courts Have Long Heard Cases Involving Violations of Privacy— and a Close Resemblance to Those Harms is Enough for Article III Purposes. .........................................................................................15

      b.   Plaintiffs Suffered a Harm Analogous to Intrusion Upon Seclusion as a Result of Defendant's Electronic Surveillance Scheme.................18

  IV.  Plaintiffs Have Standing To Pursue Injunctive Relief Because Defendant Still Retains Their Data And Can Review It At Any Time. ..................................25

CONCLUSION ....................................................................................................26

**Page(s)**

**Cases**

*Alhadeff v. Experian Info. Sols., Inc.*,
541 F. Supp. 3d 1041 (C.D. Cal. 2021) .............................................19

*Am. Farm Bureau Fed'n v. EPA*,
836 F.3d 963 (8th Cir. 2016) ..............................................................14

*Bohnak v. Marsh & McLennan Cos.*,
79 F.4th 276 (2d Cir. 2023) ...............................................................19

*Briskin v. Shopify, Inc.*,
87 F.4th 404 (9th Cir. 2023) ............................................................5, 6

*Brothers and Sisters in Christ, LLC v. Zazzle, Inc.*,
42 F.4th 948 (8th Cir. 2022) ............................................................3, 8

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ........................20, 21, 25

*Charlton-Perkins v. Univ. of Cincinnati*,
35 F.4th 1053 (6th Cir. 2022) .............................................................15

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) .........................................................17, 18

*Cohens v. Virginia*,
19 U.S. (6 Wheat.) 264 (1821) ...........................................................25

*Creative Calling Sols., Inc. v. LF Beauty Ltd.*,
799 F.3d 975 (8th Cir. 2015) ...............................................................8

*Curtis Pub. Co. v. Butts*,
388 U.S. 130 (1967) .............................................................................17

*Doe v. FullStory, Inc.*,
2024 WL 188101 (N.D. Cal. Jan. 17, 2024) ..........................................5

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
514 F.3d 1063 (10th Cir. 2008) ..........................................................9

*Duit Constr. Co. v. Bennett*,
796 F.3d 938 (8th Cir. 2015) .............................................................13

*In Re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......................................................20, 23

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021).......................................................................1, 7

*Gadelhak v. AT&T Servs., Inc.*,
950 F.3d 458 (7th Cir. 2020) .......................................................15, 16

*In re Google Inc. Cookie Placement Cons. Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .............................................................24

*In re Google RTB Cons. Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022).............................................20, 21

*Hanson v. Denckla*,
357 U.S. 235 (1958).........................................................................1

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (Jan. 22,
2024) .........................................................................................10

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017) .............................................................15

*Johnson v. Arden*,
614 F.3d 785 (8th Cir. 2010) ....................................................3, 4, 8, 9

*Johnson v. United States*,
576 U.S. 591, 597 (2015)....................................................................6

*Katz v. United States*,
389 U.S. 347 (1967)........................................................................22

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .........................................10

iii

*Keeton v. Hustler Mag., Inc.*,
  465 U.S. 770 (1984) ........................................................................10

*Knox v. MetalFarming, Inc.*,
  914 F.3d 685 (1st Cir. 2019) ...........................................................3, 4

*Lakin v. Prudential Sec., Inc.*,
  348 F.3d 704 (8th Cir. 2003) ....................................................3, 11, 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  573 U.S. 118 (2014) ........................................................................25

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ..........................................................4, 8

*Mikulsky v. Bloomingdale's, LLC*,
  2024 WL 337180 (S.D. Cal. Jan. 25, 2024) ...................................7, 23

*In Re Nickelodeon Cons. Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ........................................................18, 19

*O'Toole v. Northrop Grumman Corp.*,
  499 F.3d 1218 (8th Cir. 2007) .......................................................9, 11

*Oliver v. Noom, Inc.*,
  2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) ............................12, 13

*Opperman v. Path*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) .................................22, 23, 24

*In re Pharmatrak, Inc. Priv. Litig.*,
  329 F.3d 9 (1st Cir. 2003) ...............................................................23

*Popa v. Harriet Carter Gifts, Inc.*,
  52 F.4th 121 (3d Cir. 2022) ..............................................................5, 9

*Red River Freethinkers v. City of Fargo*,
  679 F.3d 1015 (8th Cir. 2023) ..........................................................15

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .............................................21, 23

*Rhodes v. Graham*,
37 S.W.2d 46 (Ky. Ct. App. 1931) ....................................................................21

*Riley v. California*,
573 U.S. 373 (2014)............................................................................................22

*Rydholm v. Equifax Info. Servs. LLC*,
44 F.4th 1105 (8th Cir. 2022) .............................................................................7

*Saleh v. Nike*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ...............................................................19

*Schnur v. Papa John's Int'l, Inc.*,
2023 WL 5529775 (W.D. Pa. Aug. 28, 2023)....................................................10

*Sessions v. Dimaya*,
584 U.S. 148 (2018)............................................................................................16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................................2, 13, 14

*Steinbuch v. Cutler*,
518 F.3d 580 (8th Cir. 2008) .............................................................................11

*Thomas v. Papa Johns Int'l, Inc.*,
2023 WL 6370641 (S.D. Cal. Aug. 14, 2023)....................................................10

*TransUnion v. Ramirez*,
594 U.S. 413 (2021)......................................................................................*passim*

*Tyler v. Hennepin County*,
598 U.S. 631 (2023)......................................................................................14, 15

*uBID, Inc. v. GoDaddy Grp., Inc.*,
623 F.3d 421 (7th Cir. 2010) .......................................................................5, 8, 9

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) ......................................................................23, 24

v

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*,
646 F.3d 589 (8th Cir. 2011) ...............................................................................11

*Vonbergen v. Liberty Mut. Ins. Co.*,
2023 WL 8569004 (E.D. Pa. Dec. 11, 2023)....................................12, 19, 20, 21

**Constitutional Authorities**

U.S. Const. art. III, § 2 .........................................................................................13

**Other Authorities**

Elizabeth Earle Beske, *Charting A Course Past* Spokeo *and*
TransUnion, George Mason L. Rev. (forthcoming) (manuscript at
29–30), *available at* https://ssrn.com/abstract=3924522....................................17

Restatement (Second) of Torts § 652B (Am. Law Inst. 1977).........................15, 22

Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*, 4
Harv. L. Rev. 193 (1890) ....................................................................................15

**INTRODUCTION**

According to Papa John's, the digital and physical world exist as discrete entities, never interacting. The real world, of course, is far messier. Companies integrate their internet presence and physical stores, creating a feedback loop between the two realms. Defendant's own business model is a typical example: open the Papa John's website or app, and you can easily order a pizza delivered fresh to your doorstep.

Papa John's resists this reality for a reason. Admitting that its digital and physical operations overlap in a state like Missouri exposes it to jurisdiction there. But that jurisdiction results from a series of choices Papa John's freely made. It chose to operate in Missouri. It chose to integrate its website and app into its Missouri ordering experience. And it chose to wiretap Missouri consumers who visited its website and app in order to better advertise to those same consumers. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (requiring "some act by which [a Defendant] purposefully avails itself of the privilege of conducting activities within the forum State" for specific jurisdiction). In circumstances such as these, Missouri has a "significant interest[] at stake—'providing [its] residents with a convenient forum for redressing injuries inflicted by'" Papa John's, an "out-of-state actor[]." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 368 (2021) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)).

Plaintiffs sued in federal court to vindicate the concrete privacy harms they suffered. Session Replay technology may be new, but the kind of harm involved is not: Anglo-American courts have heard privacy actions since before the Founding. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 344 (2016) (Thomas, J., concurring). Plaintiffs' injuries share a "close relationship" to these "traditionally" recognized harms, so they count as concrete injuries-in-fact for standing purposes. *See TransUnion v. Ramirez*, 594 U.S. 413, 417 (2021) (citing *Spokeo*, 578 U.S. at 340–341). This Court should allow this case to proceed.

## ARGUMENT

### I. Missouri Has Specific Jurisdiction over Papa John's Because Defendant Extracted Data from Missouri Citizens to Market to Missouri Citizens—in Connection with its Missouri Stores.

Specific jurisdiction over Papa John's comports with Due Process. Defendant should have "reasonably anticipate[d] being haled into court" in Missouri because of its "conduct and connection" to the state. *Brothers and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022). After all, Defendant reached into Missouri to surveil Missouri consumers as they browsed Defendant's website and app within the state—then used that same data to target those same Missouri consumers with ads. *See Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (explaining that specific jurisdiction exists when a defendant has "'purposefully directed its activities at Missouri residents' in a suit that 'arises out

of' or 'relates to' these activities" (brackets omitted) (quoting *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707 (8th Cir. 2003)).

Papa John's insists that purposeful availment is lacking because its nationally accessible website just *happens* to be accessible to Missouri residents. But "the question is not whether a defendant sells its product across the U.S.," as the First Circuit recently explained. *Knox v. MetalFarming, Inc.*, 914 F.3d 685, 692 (1st Cir. 2019). Instead, the question is "whether a defendant's forum connection is such 'that the exercise of jurisdiction is essentially voluntary and foreseeable.'" *Id.* (quoting *Plixr Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018)).

Defendant could foresee that its choice to operate in Missouri would expose it to jurisdiction there. It created a seamless integration of its website, app, and brick-and-mortar stores as the model for its Missouri pizza-delivery business. App. 11–12, ¶¶ 15–16; R. Doc. 1, at 4–5; App. 19, ¶ 45; R. Doc. 1, at 12. What is more, the "automatic location services" on its website and app made Defendant "continuously . . . aware" that Missouri customers interacted with its business in this way. App. 12, ¶ 16; R. Doc. 1, at 5. Defendant chose to deploy Session Replay Code to surveil Missouri customers knowing all of this. In other words, this was no "'random,' 'fortuitous,' or 'attenuated' contact with the state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (quoting *Rudzewicz*, 471 U.S. at 475). Nor was it a unilateral act by Plaintiffs that created the contacts.

Rather, it was an entirely "predictable consequence of [Defendant's] business model[]" in Missouri. *Id.*

This suit arises out of and relates to those foreseeable contacts. *See Johnson*, 614 F.3d at 794. Defendant's digitally integrated business model relied on Session Replay Code to extract data from Missouri consumers, in an effort to better target those consumers with ads to increase Missouri sales. App. 12–13, ¶¶ 19–20; R. Doc. 1, at 5–6; App. 15–16, ¶¶ 29–30; R. Doc. 1, at 8–9; App. 19, ¶ 46; R. Doc. 1, at 12; App. 29–30, ¶¶ 102–103; R. Doc. 1, at 22–23. The intentional interception of Plaintiffs' data, in other words, took place in Missouri in connection with these contacts.[1] *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010) (rejecting argument that the location of a defendant's servers is more significant than the location where the defendant's actions resulted in infringement injuries); *see also Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131–32 (3d Cir. 2022) (holding in similar wiretapping case that place of interception is the user's browser,

---

[1] Defendant attempts to characterize Session Replay Code as an innocuous and necessary part of the internet: surely, Papa John's says, it cannot be the case that "every website on the internet violates various privacy laws when it receives data from or about a visitor to its site." Br. of Appellee, at 23. This characterization is inaccurate. As the complaint alleges, "Defendant's use of . . . Session Replay Code to contemporaneously intercept Plaintiffs' electronic communications at the time of transmission was not instrumental or necessary to Defendant's provision of any of its goods or services." App. 29, ¶ 102; R. Doc. 1, at 22. It is simply not true that every website on the internet relies on, let alone uses, Session Replay Code—and it is the use of that code that Plaintiffs allege violates various privacy laws.

where the communications are routed towards the third-party eavesdropper's servers).

*Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), does not change this analysis. *Briskin* dealt with "the nature of the personal jurisdiction test to be applied to a data processing platform," not a consumer-facing website. *Doe v. FullStory, Inc.*, 2024 WL 188101 (N.D. Cal. Jan. 17, 2024) (applying *Briskin* in a case against a Session Replay Provider). As a payment-processing platform, Shopify "depend[ed] on the actions of third-party merchants" for its contacts with the forum state. *Briskin*, 87 F.4th at 423. It is these merchants—not Shopify—that chose where to operate and offer their online storefront to customers. *See id.* at 410–11, 414. The payment-processing company's other contacts with the state, such as "an office in San Francisco," thus did not "relate to" the plaintiff's claims. *Id.* at 410, 414.

Not so here. Papa John's chose to target Missouri with its website, app, and brick-and-mortar stores, integrating them together to forge one customer experience with localized offerings. Even under *Briskin*, this kind of "focused dedication to the forum state . . . permits the conclusion that the defendant's suit-related conduct 'creates a substantial connection' with" Missouri. *Id.* at 420 (brackets omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). And the very "nature and structure of . . . [D]efendant's business" that show purposeful

availment give rise to the same "extraction and retention of consumer data" that prompted this suit. *Id.* at 423.

Defendant attempts to undercut the relevancy of its Missouri stores, pizza sales, and marketing campaigns. It argues these forum-state contacts do not "relate to" its wiretapping there because Plaintiffs never alleged purchasing specific products or receiving specific advertisements.[2] But as Plaintiffs have alleged, Defendant's digital and physical footprints overlap and intermingle. As a result,

> It is reasonable to infer that the [websites and apps] in question here would never have been on [consumer's browsers] in [Missouri] if they were some totally unknown brand that had never been advertised in [that] State[], [had no products] sold in [that] State[], would not be familiar to [consumers] in th[at] State[], and could not have been easily [used to order products] available in [that] State[].

*Ford*, 592 U.S. at 374 (Alito, J., concurring in the judgment); *see Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) ("draw[ing] all reasonable inferences in the plaintiff's favor"). Papa John's "systematically served" the Missouri market in large part through the very website and app that Plaintiffs allege wiretapped and injured them in the state. *Id.* at 365. As a result, "there is a strong 'relationship among the defendant, the forum, and the litigation'—the

---

[2] Defendant also argues that Plaintiffs' "privacy-related claims [cannot] depend" on marketing because the alleged harm occurs "immediately" upon loading the app or website landing page. Br. of Appellee, at 16–17. Defendant ignores the ongoing harm related to its use of Session Replay Data to target advertising to individual consumers. App. 30, ¶ 103; R. Doc. 1, at 23; App. 42, ¶ 160; R. Doc. 1, at 35.

'essential foundation of specific jurisdiction.'" *Ford*, 592 U.S. at 364 (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984)).

The *Calder* Test confirms as much. Papa John's reached into Missouri to wiretap its citizens, "with the purpose of collecting the data . . . at least in part[] to support in-store operations" in the state. *Mikulsky v. Bloomingdale's, LLC*, 2024 WL 337180, at *5 (S.D. Cal. Jan. 25, 2024) (finding specific jurisdiction existed over website that used Session Replay Data); *see Johnson*, 614 F.3d at 796 (explaining that the *Calder* test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state" (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir. 1991))).

As the discussion above makes clear, Defendant "expressly aimed" its conduct at Missouri.[3] *See id.* To be sure, its app and website have "national viewership and scope." *Mavrix*, 647 F.3d at 1231. But both website and app "appeal[] to, and profit[] from, an audience in [Missouri]." *Id.* The integration of the app and website with local Missouri stores—including by offering location-specific deals—confirms that Defendant "'expressly aimed' at that state." *Id.*; *see GoDaddy*, 623 F.3d at 428–29. In other words, Defendant targeted Missouri in a way the defendant in *Zazzle* did not. *Compare Zazzle*, 42 F.4th at 952 (concluding

---

[3] Defendant does not dispute that it satisfies *Calder*'s intentional act requirement.

Defendant lacked sufficient contacts because only a "single t-shirt sale" connected the company with Missouri and the underlying suit) *with Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 981 (8th Cir. 2015) (determining defendant had sufficient contacts with the forum state because it reached out to an Iowa company to solicit business and "shipped thousands of pre-production and production samples to Iowa pursuant to the contract").

Further, Defendant knew Missouri citizens like Ms. Jones and Ms. Tenzer would suffer harm in the state as a result of its actions. *See Johnson*, 614 F.3d at 796. It offered Missouri customers local deals through its website and app. *See* Papa John's, *Find Your Store*, https://www.papajohns.com/order/stores-near-me?country=USA&postalCode=63103 (last visited Apr. 16, 2024) ("Menu, Special Offers, and Pricing *may vary for each Papa John's location*." (emphasis added)); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224–25 (8th Cir. 2007) (taking judicial notice of a defendant's website). And the location data it collected confirmed that Missouri citizens used its website and app. Knowing this, Defendant used Session Replay Code to collect information from them as they browsed the website or app in the state. App. 11–12, ¶¶ 15–16; R. Doc. 1, at 4–5. As a result, "there is no meaningful dispute" in this case "that plaintiffs' injury was suffered entirely" in Missouri. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077 (10th Cir. 2008); *see GoDaddy*, 623 F.3d at 432; *Popa*, 52 F.4th at

131–32. Defendant "more than foresaw or knew the harm alleged to have befallen forum residents"—indeed, "[it] do not dispute that [it] *intended* to cause" the wiretapping that affected Missouri residents. *Dudnikov*, 514 F.3d at 1077.

As Plaintiffs noted in their opening brief, two courts have already found specific jurisdiction over Papa John's warranted on similar facts.[4] *See Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024) (holding that specific jurisdiction existed under the *Calder* effects test); *Thomas v. Papa Johns Int'l, Inc.*, 2023 WL 6370641 (S.D. Cal. Aug. 14, 2023) (same).[5] As these courts explained, "Defendant's argument that the 'relevant conduct' is the 'operation of a nationally accessible website and alleged use of "session replay" technology on that website' too narrowly frames the scope of the inquiry." *Kauffman*, 2024 WL

---

[4] The fact that Defendant's actions harmed plaintiffs in another state does not affect whether jurisdiction exists in Missouri. *See, e.g., Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984) (holding that a defendant that "produce[d] a national publication aimed at a nationwide audience" could be called to "answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed"); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095 (9th Cir. 2023) (holding that an online retailer can be subject to specific jurisdiction for forum-state sales that "occur in the defendant's regular course of business," no matter how small a percentage of total sales they represent), *cert. denied*, 144 S. Ct. 693 (Jan. 22, 2024) (No. 23-504).

[5] Defendant cites one case reaching the opposite outcome, *see Schnur v. Papa John's Int'l, Inc.*, 2023 WL 5529775 (W.D. Pa. Aug. 28, 2023), but *Schnur* made the same mistake as the district court here: it incorrectly assumed that Defendant's website and wiretapping activities were divorced from the physical world. That case is also currently on appeal at the Third Circuit. *See Schnur v. Papa John's Int'l, Inc.*, No. 23-2573 (3d Cir.).

171363, at *5. This Court should reach the same decision and hold that Missouri has specific jurisdiction over Defendant.

## II. Jurisdictional Discovery is Appropriate Given the Jurisdictional Facts in Dispute About Defendant's Missouri Footprint.

Alternatively, this Court should remand for jurisdictional discovery. Where, as here, "facts necessary to resolving the jurisdictional inquiry are either unknown or disputed," jurisdictional discovery is appropriate. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 598 (8th Cir. 2011) (citation omitted). Plaintiffs have raised facts beyond "mere[] speculation or conclusory allegations." *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008). They have pointed to Defendant's 49 brick-and-mortar stores in the state and its local deals offered to Missouri residents through its website and mobile app. *See* App. 11–12, ¶¶ 15–16; R. Doc. 1, at 4–5; *see also* Papa John's, *Papa Johns Stores in Missouri*, https://locations.papajohns.com/united-states/mo (last visited Apr. 11, 2024); Papa John's, *Find Your Store*, https://www.papajohns.com/order/stores-near-me?country=USA&postalCode=63103 (last visited Apr. 16, 2024); *O'Toole*, 499 F.3d at 1224–25.

The Eighth Circuit has concluded that such a showing warrants Plaintiffs "to take some jurisdictional discovery to establish whether . . . personal jurisdiction would be justified." *Steinbuch*, 518 F.3d at 588–89 (remanding for jurisdictional discovery on a similar record, even though the plaintiff had not established a prima

facie case for jurisdiction yet). Similarly, in *Lakin*, this Court remanded for jurisdictional discovery to gather information on "the number of times that Missouri consumers have accessed the Web site[,] the number of Missouri consumers that have requested further information about [defendant's] services[,] [and] the number of Missouri consumers that have utilized the online . . . services," among other facts. 348 F.3d at 712–13. Defendant, however, declines to engage with these cases, and instead implies that Plaintiff relies solely on out-of-circuit authority. *See* Br. of Appellee, at 31; *but see Lakin*, 348 F.3d at 713 (in which this Circuit cites the same out-of-circuit authority approvingly).

Other courts have followed a similar path in Session Replay cases. In *Oliver v. Noom, Inc.*, 2023 WL 8600576, at *5 (W.D. Pa. Aug. 22, 2023), the district court allowed jurisdictional discovery for plaintiffs bringing claims involving Session Replay Code. As the court explained, the plaintiffs' allegations that an online weight-loss platform "marketed and sold its services in Pennsylvania," "collected the data of Pennsylvania" users, and knew it was doing so because of its geolocation data "suggest[ed] with 'reasonable particularity[]' the possible existence of the requisite 'contacts . . . [with] the forum state.'" *Id.* (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). The plaintiffs were "entitled" to jurisdictional discovery as a result. *Id.*; *see Vonbergen v. Liberty Mut. Ins. Co.*, 2023 WL 8569004, at *8 (E.D. Pa. Dec. 11, 2023) (allowing

plaintiffs to conduct jurisdictional discovery because the allegations "demonstrate[d] that [defendant] expressly aimed its website at Pennsylvania and suggest[ed] the possibility that [defendant] knew the brunt of the harm would be suffered" there).

The district court abused its discretion by denying Plaintiffs jurisdictional discovery. This Court should remand for further factfinding on Defendant's "business plans, sales, and marketing strategies for" Missouri as well as its "knowledge of the harm caused by its allegedly tortious conduct" in the state. *Noom*, 2023 WL 8600576, at *5.

### III. Plaintiffs Have Standing Because They Suffered A Privacy Injury Closely Related to Traditional Privacy Harms.

Although the District Court declined to reach Article III standing, Defendant raises this issue again. As "a jurisdictional issue[,] . . . this court 'is bound to ask and answer [that question] for itself.'" *Duit Constr. Co. v. Bennett*, 796 F.3d 938, 941 (8th Cir. 2015) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). Article III of the Constitution limits federal courts to hearing cases and controversies alone. *See* U.S. Const. art. III, § 2; *see also TransUnion*, 594 U.S. at 422–23 (explaining how the case-or-controversy requirement works). The requirement "limits the category of litigants empowered to maintain a lawsuit in federal court," *Spokeo*, 578 U.S. at 338, to those with a "'personal stake' in the case," *TransUnion*, 594 U.S. at 423 (quoting *Raines v. Byrd*, 521 U.S. 811, 819

(1997)). The plaintiff bears the burden of establishing standing. *See Spokeo*, 578 U.S. at 338. Put differently, "a plaintiff must plead an injury in fact attributable to the defendant's conduct and redressable by the court" to bring suit in federal court. *Tyler v. Hennepin County*, 598 U.S. 631, 636 (2023).

Defendant attacks Plaintiffs' injuries as insufficiently concrete to meet Article III's injury-in-fact element. To establish it, a plaintiff must show that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A harm is particularized if it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. It is concrete if it is real, not abstract. *Spokeo*, 578 U.S. at 340.

"Real" does not necessarily mean "tangible." *TransUnion*, 594 U.S. at 424–25. The Supreme Court has recognized that "intangible harms"—like "reputational harms, disclosure of private information, and intrusion upon seclusion"—can still be "concrete." *Id.* at 425. The determination rests on "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (quoting *Spokeo*, 578 U.S. at 341).

Courts analyzing standing must "assume that on the merits the plaintiffs would be successful in their claims." *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016); *see Tyler*, 143 S. Ct. at 1374 (explaining that, when assessing standing at the motion-to-dismiss stage, courts "take the facts in the complaint as true"). After all, "[t]he standing inquiry is not . . . an assessment of the merits of a plaintiff's claim." *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2023); *see Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1058–59 (6th Cir. 2022) ("[W]hether a plaintiff can get into federal court under Article III—a jurisdictional question—is not determined by whether he can also plausibly plead the elements of a cause of action—a merits question." (citing *Steel Co.*, 523 U.S. at 89)).

### a. Courts Have Long Heard Cases Involving Violations of Privacy— and a Close Resemblance to Those Harms is Enough for Article III Purposes.

"Privacy torts have become 'well-ensconced in the fabric of American law." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017); *see generally* Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890) (tracing the development of the right to privacy). Historically, "[t]he common law has long recognized actions at law against defendants who invaded the private solitude of another by committing the tort of 'intrusion upon seclusion.'" *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458,

462 (7th Cir. 2020) (Barrett, J.) (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)). Injuries that bear a "close relationship" with this harm satisfy Article III standing. *TransUnion*, 594 U.S. at 425.

To meet this test, *TransUnion* "do[es] not require an exact duplicate" of the common-law cause of action. *Id.* at 424, 433. Instead, the harm need only be "analog[ous]," *id.* at 424—"in kind, *not* degree," *Gadelhak*, 950 F.3d at 462 (emphasis added). Yet Defendant asks Plaintiffs "[t]o 'make a submissible case of intrusion upon seclusion" to demonstrate they have standing.[6] Br. of Appellee, at 41.

*TransUnion* rejected such a requirement. There, plaintiffs sued a credit-reporting agency that mislabeled class members as terrorists because they "happen[ed] to share a first and last name" with someone on a government watch list. 594 U.S. at 419–20. The agency disseminated the terror-watch-list alerts to third-party businesses for 1,853 class members. *Id.* at 421. The Supreme Court held

---

[6] Not only does Defendant seek to require Plaintiffs to meet each element, it hides the ball as to *which* elements it believes are required. *See* Br. of Appellee, at 41 n.10. Rather than look to the common-law analog in Missouri, it gestures to a sort of Platonic form of intrusion upon seclusion. This Court should reject Defendant's approach. Attempting to "imagin[e] the ordinary case" is a fraught and "speculative" endeavor. *Johnson v. United* States, 576 U.S. 591, 597 (2015). "How does one go about deciding what kind of conduct the 'ordinary case'" of a historical tort involves? *Id.* Defendant does not say. *See Sessions v. Dimaya*, 584 U.S. 148, 230 (2018) (Thomas, J., dissenting) (criticizing the categorical approach applied in Armed Career Criminal Act cases, which asks courts to hypothesize the "generic" version of a cause of action).

that those class members suffered an injury closely analogous to "the reputational harm associated with the tort of defamation." *Id.* at 432.

Defamation, however, does not cover disparaging facts that are literally true. *See Curtis Pub. Co. v. Butts*, 388 U.S. 130, 151 (1967). And as TransUnion itself argued before the Supreme Court, "[n]o one . . . ever disputed that each class member *in fact* ha[d] a first and last name of someone on the [terror watch] list." Reply Br. of Petitioner at 8, *TransUnion LLC v. Ramirez*, No. 20-297.

The Court acknowledged and dismissed this argument. *TransUnion*, 594 U.S. at 433. That kind of "exact duplicat[ion]" of a traditional harm was not required. *Id.* So "[t]he Court concluded that truthfully labeling someone a 'potential terrorist'—which would *not* have been actionable defamation at common law—was 'sufficiently close' to the harm of falsely labeling someone an actual terrorist to represent an actionable new harm." Elizabeth Earle Beske, *Charting A Course Past* Spokeo *and* TransUnion, George Mason L. Rev. (forthcoming) (manuscript at 29–30), *available at* https://ssrn.com/abstract=3924522; *TransUnion*, 594 U.S. at 433. In other words, *TransUnion* explicitly did not require the kind of exact match Defendant would have this Court impose.

The Third Circuit rejected another defendant's attempt to enforce similar requirements. *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022). Like Papa John's, the defendant in *Clemens* "contended that any analogies to the

traditional privacy torts fail because the stolen data here was not the sort of inherently private information that could have given rise to a successful privacy claim at common law." *Id.* at 155 n.5. As the Third Circuit acknowledged, "the tort of public disclosure of private facts would not include the transactional employee data" exposed in the data breach at issue. *Id.*

Nevertheless, the Third Circuit held that the plaintiffs had alleged a concrete injury. The court explained that the defendant had "mistake[n] the nature of the inquiry required for an assessment of Article III standing." *Id.* The question of whether an "asserted injury" satisfies standing "and whether a plaintiff has successfully made out claims under a particular cause of action [are] separate question[s]." *Id.* For standing purposes, it was enough that "the exposure of . . . information employees would normally choose to keep themselves" was made public—closely resembling the traditional privacy torts. *Id.*

### b. Plaintiffs Suffered a Harm Analogous to Intrusion Upon Seclusion as a Result of Defendant's Electronic Surveillance Scheme.

Plaintiffs' injury here bears a similarly "close relationship" to historical harms. Papa John's recorded and shared private and personal data about Plaintiffs without their permission as they browsed Defendant's website and/or app. App. 18, ¶¶ 41–42; R. Doc. 1, at 11; App. 20, ¶¶ 50–51; R. Doc. 1, at 13; App. 24, ¶¶ 73–74; R. Doc. 1, at 17. Courts have confirmed that the recording and disclosure of information related to a person's online behavior are concrete harms that resemble

traditional common-law causes of action—both pre- *and* post-*TransUnion*. *See In Re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285–87 (2d Cir. 2023).

Contrary to Defendant's protestations, courts have accepted that "mouse movements, clicks, typing, scrolling" and other browsing activities convey substantive content. *Saleh v. Nike*, 562 F. Supp. 3d 503, 517–18 (C.D. Cal. 2021) (rejecting argument that this content is non-communicative at the motion-to-dismiss stage). Taken separately, "mouse clicks and movements could communicate preferences among presented options; keystrokes and search terms could communicate objects of the user's curiosity; pages and content scrolled through could communicate the depth of a user's interest; and copy and paste actions could communicate substantive information about a user's life or their browsing history on other websites." *Vonbergen*, 2023 WL 8569004, at *11. Taken together, these details "divulge Plaintiff's personal interests, browsing history, queries, and habits" by showing "what he did on Defendant's website, what he searched for, what he looked at, and the information he inputted." *Alhadeff v. Experian Info. Sols., Inc.*, 541 F. Supp. 3d 1041, 1045 (C.D. Cal. 2021). Put simply, this private information reveals personal details about an individual.

Moreover, Plaintiffs maintain a reasonable expectation of privacy in this information.[7] Courts have proven "reluctant to find that any reasonable person" expects a third party to intercept her online communications. *Vonbergen*, 2023 WL 8569004, at *12. And they have recognized that individuals have a reasonable expectation of privacy in their personal web-browsing activities. *See In Re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) (holding that plaintiffs adequately alleged a reasonable expectation of privacy where defendant collected and created "highly personalized profiles from [plaintiffs'] sensitive browsing histories and habits"); *Brown v. Google LLC*, 2023 WL 5029899, at *20 (N.D. Cal. Aug. 7, 2023) (explaining that users have a reasonable expectation of privacy "over URLS that disclose . . . the particular document within a website that a person views" (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022)); *In re Google RTB Cons. Priv. Litig.*, 606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) (finding that allegations that defendant "shared . . . plaintiffs' personal and sensitive information without disclosing that it would precludes . . . [the] finding that plaintiffs have no reasonable expectation of privacy in this information").

---

[7] As outlined above, Plaintiffs reject the notion that they need to specifically allege the elements of intrusion upon seclusion to show standing—including any element concerning a reasonable expectation of privacy.

Indeed, other courts have confirmed that these kinds of electronic surveillance allegations fulfill Article III standing requirements. *See id.* at 942–43 (involving allegations that Google "surreptitiously observes, collects, and analyzes real-time information about everyone engaging on [its] platforms"); *Brown*, 2023 WL 5029899, at *5–6 (reaching the same conclusion where, despite collecting data anonymously, Google stored data using unique identifiers that it could match to users, and then send those users personalized ads).

To evade this conclusion, Defendant likens shopping on a website with Session Replay Code to shopping in a retail store. But the comparison is a flawed one. *See Vonbergen*, 2023 WL 8569004, at *11 (declining to "conclude as a matter of law that intercepting . . . browsing activity is necessarily the same as intercepting a patron's movements through a brick-and-mortar store"). The true analogy would be if Plaintiffs called a Papa John's store to order pizza, ignorant of the fact that Defendant had invited Session Replay Providers to wiretap the call and listen in on Plaintiffs' every word. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019); *Rhodes v. Graham*, 37 S.W.2d 46, 47 (Ky. Ct. App. 1931) ("It is the legal right of every man to enjoy social and business relations with his friends, neighbors, and acquaintances, and he is entitled to converse with them without molestation by intruders.").

One reason why the analogy fails is that the internet blurs the line between what counts as public or private. Homes were historically treated differently than the public sphere. *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) ("A man's home is, for most purposes, a place where he expects privacy."); 3 W. Blackstone, Commentaries on the Laws of England 288 (1768) ("[E]very man's house is looked upon by the law to be his castle."). But today, individuals can access websites and apps at home from personal computers and cell phones, the use of which may "expose far *more* than the most exhaustive search of a house." *Cf. Riley v. California*, 573 U.S. 373, 396 (2014) (explaining that modern cell phones "[w]ith all they contain and all they may reveal . . . hold for many Americans 'the privacies of life'" (citation omitted)). And here, Plaintiffs chose to communicate with Papa John's from their personal devices in Missouri— not to have a public conversation at a brick-and-mortar store.

Moreover, even the Restatement (Second) of Torts recognizes that "in a public place . . . there may be some matters about the plaintiff . . . that are not exhibited to the public gaze." § 652B (Am. L. Inst. 1977). In such a circumstance, "there may still be invasion of privacy when there is intrusion upon these matters." *Id.* This flexibility makes sense: "privacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic." *Opperman v. Path*, 205 F. Supp. 3d 1064, 1073 (N.D. Cal. 2016) (quoting *Sanders v. Am. Broad. Companies, Inc.*, 20 Cal.4th

907, 916 (1999)). Instead, "[t]here are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." *Id.* (quoting *Sanders*, 20 Cal. 4th at 916). Here, although the communication took place on the public internet, it was not apparent that there were any other participants in Plaintiffs' browsing sessions besides Plaintiffs and Papa John's. So Plaintiffs could reasonably expect their communications to remain private.

Perhaps sensing this infirmity, Defendant insists that Plaintiffs voluntarily conveyed the information to it. But as another court explained, "it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly." *Mikulsky*, 2024 WL 337180, at *7 (quoting *Revitch*, 2019 WL 5485330, at *2). As a result, courts have held that "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception." *Facebook Tracking*, 956 F.3d at 607–08; *In re Pharmatrak, Inc. Priv. Litig.*, 329 F.3d 9, 22 (1st Cir. 2003) (considering a defendant vulnerable to liability under the Wiretap Act when it "automatically duplicated part of the communication between a user and [another website] and

sent this information to [defendant]"); *United States v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010) (similar); *but see In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015) (reaching the opposite conclusion).

What is more, Plaintiffs specifically alleged they would not have visited Defendant's website or app had they known it would intercept, collect, and disclose their communications to third-party vendors. App. 40–41, ¶¶ 154–155; R. Doc. 1, at 33–34. Plaintiffs explained that "the landing page[s] to Defendant's website [and] Defendant's app not only fail[] to advise visitors that Defendant is intercepting their electronic communications," they contain no "conspicuous disclosure regarding Defendant's terms of use or privacy policy" at all. App. 28, ¶ 94; R. Doc. 1, at 21. Plaintiffs, in other words, conveyed information to Defendant without the benefit of all the facts. And "consent is only effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct' and . . . the alleged tortfeasor did not exceed the scope of that consent." *Opperman*, 205 F. Supp. 3d at 1072–73 (quoting Restatement (Second) of Torts § 892A (1979) §§ 2(b), 4). Defendant here clearly exceeded the scope of any consent on Plaintiffs' part by allowing Session Replay Code to wiretap their communications.

The facts show that Plaintiffs have alleged privacy injuries closely resembling a common-law analogue, as Article III requires. This Court should reject Defendant's attempt to narrow the realm of cases it can hear and allow this suit to proceed. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 573 U.S. 118, 126 (2014) (explaining that federal courts have a "virtually unflagging" obligation to "hear and decide cases within [their] jurisdiction"); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) (stating that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given").

### IV. Plaintiffs Have Standing To Pursue Injunctive Relief Because Defendant Still Retains Their Data And Can Review It At Any Time.

Plaintiffs also have standing to pursue injunctive relief because they alleged an "imminent and substantial" future "risk of harm." *TransUnion*, 594 U.S. at 415 (explaining that courts must analyze each form of relief separately for standing purposes). Even if Ms. Jones and Ms. Tenzer avoid the Papa John's website and app, they will continue to suffer harm from Defendant's ongoing retention and use of their data from their earlier visits to the website and/or app. Defendant can replay their browsing sessions to analyze their "personal interests, browsing history, queries, and habits" at any time. App. 26, ¶ 82; R. Doc. 1, at 19. This loss of control over one's private information is a harm in itself, as described above, and that harm is ongoing so long as Defendant is not enjoined from storing or

using the Session Replay Data. *See Brown*, 2023 WL 5029899, at *7 (allowing plaintiffs to pursue injunctive relief where defendant "ha[d] not stopped" online tracking and "continue[d] to collect users' private browsing data for its own use without users' express consent").

## CONCLUSION

Plaintiffs respectfully ask this Court to reverse the district court's order granting the motion to dismiss and remand for further proceedings.

Dated: April 16, 2024

Respectfully submitted,

/s/ Kate M. Baxter-Kauf
Karen Hanson Riebel
Kate M. Baxter-Kauf
Maureen Kane Berg
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
(612) 596-4097

Tiffany Marko Yiatras
**CONSUMER PROTECTION LEGAL, LLC**
308 Hutchinson Road
Ellisville, Missouri 63011-2029
Telephone: (314) 541-0317

Bryan L. Bleichner
Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue S,

Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE STYLE REQUIREMENTS AND CERTIFICATION THAT PDF IS VIRUS-FREE

### 1. Type-Volume

This document complies with the word limit of FRAP 27(d)(2)(A) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 6,095 words.

### 2. Typeface and Type-Style

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) and FRAP 32(a)(7)(B) as it has been prepared using Microsoft Word 2016 in Times New Roman 14-point.

### 3. Virus Free

This document complies with the virus free requirements of FRAP 28(h)(2).


Date: April 16, 2024                                      /s/ Kate M. Baxter-Kauf

                                                              Kate M. Baxter-Kauf

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the Court's CM/ECF system on April 16, 2024. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


Date: April 16, 2024                                  /s/ Kate M. Baxter-Kauf

                                                      Kate M. Baxter-Kauf